UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

JONATHAN M. HENRY,

                     Plaintiff,

       -against-

BANK OF AMERICA, FIA CARD SERVICES, N.A.,
and CSI PROCESSING LLC,

                Defendants.

------------------------------------------------------------------x

Civ.

**COMPLAINT**

**13 CV 1005**

JUDGE SEIBEL

## PARTIES

1.    The plaintiff, Jonathan Henry, alleges upon information and belief as follows: Defendant Bank of America (hereafter "BOA") is a Delaware corporation and multinational banking and financial services and bank holding company with its headquarters located in Charlotte, North Carolina.

2.    Defendant BOA is licensed to conduct business in the States of New York, Delaware, Nebraska and Nevada pursuant to the laws of those States.

3.    Defendant FIA Card Services, N.A. (hereafter "FIA") is a wholly-owned subsidiary of defendant BOA with its principal place of business in Wilmington, Delaware.

4.    Defendant FIA is a wholly-owned subsidiary of defendant BOA and is the issuer of defendant BOA's credit cards with a principal place of business in Wilmington, Delaware.

5.    Defendant Control States Processing LLC is the Plan Administrator for BOA's Credit Protection Plan with offices in Omaha, Nebraska and is a subsidiary of Control States Indemnity LLC. (hereafter "CSI").

6.    Defendant BOA is one of the largest general purpose credit card issuers in the United States.

## PRELIMINARY STATEMENT

7.      This action seeks monetary damages, compensatory damages, punitive damages, costs, expenses and attorneys' fees for defendants' illegal, unfair and fraudulent conduct in involuntarily enrolling plaintiff in defendants' Credit Protection Plan and in defendants' selling, marketing and administering credit protection products associated with plaintiff's credit card. Plaintiff contends that defendants' acts and omissions violated: the Truth In Lending Act of 1968, as amended, 15 U.S.C. §1601 and §1666; and Regulation Z, 12 C.F.R. Part 26, promulgated by the Federal Reserve Board pursuant to 15 U.S.C. §1604. Further, based upon the Court's pendent jurisdiction over questions of state law arising from the same nucleus of operative facts, plaintiff contends that defendants' acts and omissions violated: Delaware's Consumer Fraud Act, 6 Del. C. §2511-27, §2580-84; the New York Consumer Fraud Act; the New York General Business Law; the New York Banking Laws; New York laws governing fraud; the covenant of good faith and fair dealing; the prohibition against unjust enrichment; and the duties of a fiduciary.

## JURISDICTION AND VENUE

8.      This action properly lies in the United States District Court for the Southern District of New York because the plaintiff and defendants reside and/or maintain a place of business or operation in this judicial district.

9.      Plaintiffs' claims pursuant to the aforementioned federal statutory provisions posit original jurisdiction in the United States District Court.

10.     The pendent state claims arise under the statutory and common law of the State of Delaware and State of New York and this Court has supplemental jurisdiction over such claims under 28 U.S.C. §1367.

## NATURE OF CLAIMS

11.    Defendants advertise their Credit Protection Plan as an important safety net to protect consumers' credit card accounts.

12.    Defendants advertise that their Credit Protection Plan provides benefits upon the occurrence of protected events, such as involuntary unemployment, hospitalization, disability, family leave of absence and loss of life.

13.    Defendants advertise that their Credit Protection Plan provides payment for a limited period of time upon the occurrence of a life event such as marriage, childbirth, adoption, college and home relocation.

14.    Defendants enroll consumers in their Credit Protection Plan through direct mail marketing or phone calls by requesting that they sign up when they activate their credit cards and then enroll them even if they did not consent to enroll.

15.    Defendants enroll consumers in their Credit Protection Plan even if they initially request more information on defendants' product.

16.    Defendants do not require any affirmative action by consumers to enroll in their Credit Protection Plan and then charge them without their consent.

17.    Defendants conceal their initial enrollment of consumers in their Credit Protection Plan by sending materials to them after the fact of their involuntary enrollment.

18.    Defendants mislead consumers about any right to opt out of their Credit Protection Plan through sending enrollment materials after consumers have been involuntarily enrolled by defendants.

19.    Defendants charge fees for their Credit Protection Plan to alleged enrollees credit cards.

3

20.    Defendants do not send separate invoices to consumers for fees associated with their Credit Protection Plan.

21.    Defendants charge consumers for their alleged enrollment in the Credit Protection Plan through a line-item fee listed on their monthly credit card statements.

22.    When consumers challenge or question unauthorized fees, defendants mislead and deceive consumers through involuntarily enrolling them in their Credit Protection Plan and then claiming that they consented to such enrollment.

23.    Defendants coerce consumers to keep paying for their Credit Protection Plan through deceptive marketing and impeding them from cancelling their enrollment or obtaining a refund.

24.    When consumers complain that they did not authorize the charges for the Credit Protection Plan, the defendants do not discuss it with the consumers, but attempt to convince them to stay in the Credit Protection Plan without disclosing the value of retention as opposed to the limited benefits.

25.    If consumers have voluntarily enrolled in the Credit Protection Plan, the defendants misrepresent and materially omit the terms of the Credit Protection Plan.

26.    Defendants solicit consumers with high pressure tactics in promising consumers to help them in time of need and fail or do not adequately explain the Credit Protection Plan's limitations, restrictions, exclusions and the proof required to establish a claim.

27.    Defendants' written materials present the terms and conditions of the Credit Protection Plan in a confusing and ambiguous manner, so that consumers cannot understand them.

4

28.    Defendants' written materials present numerous restrictions and qualifications on the coverage provided in the Credit Protection Plan and appear in small print and in incomplete, incomprehensible and misleading language, which deny consumers an informed consent.

29.    Defendants' Credit Protection Plan deceptively states that consumers may affirmatively cancel their enrollment during a "30-day review period."

30.    Defendants' Credit Protection Plan also provides that "all Plan fees billed to your account will be refunded as a credit to the protected card."

31.    Defendants' Credit Protection Plan deceives the consumers about the "30-day review period" in that it is not a review period, since they have been already involuntarily enrolled and they have the affirmative duty to disenroll.

32.    Defendants do not adequately describe or explain the exclusions in the Credit Protection Plan to prospective enrollees, so they could determine whether they have certain attributes or meet certain requirements, the absence of which would bar them from being eligible for benefits.

33.    These misrepresentations and material omissions market defendants' Credit Protection Plan as a viable option for ineligible prospects, such as retired persons who are not employed.

34.    Defendants abuse the administrative process for filing claims under their Credit Protection Plan and mislead applicants for benefits through indicating the futility of filing a claim, and through providing incorrect information about submitting a claim, such as the type of necessary information and the time limitation for submission.

35.    Defendants exercise unfettered and unchallengeable discretion in the administration of the claims process for their Credit Protection Plan.

5

36. Defendants exercise their discretion in bad faith under the Credit Protection Plan to maximize the number of claims denied through blocking the filing of claims, through harassment of claimants or potential claimants with abusive phone calls, through the establishment of arbitrary impediments and through the arbitrary denial of claims.

37. Defendants impose a monthly charge of approximately $0.89 to $1.00 per $100 of consumers' monthly ending credit balance for the Credit Protection program.

38. Defendants have collected hundreds of millions or billions of dollars under their Credit Protection Plan while paying out little in the way of benefits.

39. Defendants' practices have caused substantial and significant harm to consumers.

40. There is no arbitration clause applicable to plaintiffs' alleged Credit Protection Plan itself: any agreement to arbitrate is separate and independent of the Credit Protection Plan at issue as it is contained in the credit card agreements, not the Plan.

41. Plaintiff did not agree to arbitrate any claim.

42. Defendants are guilty of fraud in the inducement of any alleged agreement to arbitrate since plaintiff was misled as to his enrollment and his eligibility to obtain benefits.

43. The defendants have removed the arbitration provision from credit card agreements.

44. Defendants had selected an arbitration forum, National Arbitration Forum, which is no longer accepting consumer arbitrations as it was closed because of corruption.

## UNITED STATES GOVERNMENT ACCOUNTABILITY
## <u>OFFICE REPORT OF MARCH 2011</u>

45.    In March 2011, the United States Government Accountability Office issued a report entitled "Credit Cards - Consumer Costs for Debt Protection Products Can Be Substantial Relative To Benefits But Are Not A Focus Of Regulatory Oversight" ("GAO Report").

46.    The GAO Report analyzed the data it had requested on debt protection and credit insurance from three major credit insurers and the nine largest credit card issuers, which represented 85% of the credit card market.

47.    The GAO Report found that in 2009, consumers paid about $2.4 billion on 24 million accounts for debt protection products and received $518 million in benefits, which represents a payout of 21%.

48.    The GAO Report found that debt protection products have largely displaced credit insurance in the credit card market.

49.    The GAO Report found that credit card issuers market credit protection products broadly rather than to specific consumers.

50.    The GAO Report found that fees for credit protection products can be substantial, with the annual cost often exceeding 10 percent of the cardholder's average monthly balance.

51.    The GAO Report found that in the aggregate, cardholders received 21 cents in tangible financial benefits for every dollar spent in debt protection product fees among the nine largest issuers in 2009.

52.    The GAO Report found that debt protection products can be difficult for consumers to understand.

53.    The GAO Report found that Bank of America held 17% of the total market of credit card issuers by outstanding general purpose credit card balances, representing an outstanding balance of $122 billion.

54.    The GAO Report found that the "cancellation" of a debtor's minimum monthly payment may be modest.

55.    The GAO Report found that the "suspension" of a debtor's minimum monthly payment may have limited direct monetary value because it does not pay down any of the cardholder's balance, but waives accrual of interest during the benefit period which varies depending on the cardholder's balance.

56.    The GAO Report found that the limited duration of benefits from a payment protection plan, usually between 6 and 24 months, can be modest.

57.    The GAO Report found that issuers of debt protection products may cap the amount of debt that is cancelled, but do not cap the fee accordingly.

58.    The GAO Report found that "bundling" which is characteristic of debt protection products (coverage for multiple events) can result in cardholder's purchasing coverage not always applicable or valuable to them.

59.    The GAO Report found that a consumer holding a specific credit card can purchase a debt protection product only through the issuer of that card.

60.    The GAO Report found that in contacting customer service representatives of the nine issuers, seven told them that they would not provide the terms and conditions unless they enrolled in the product.

61.     The GAO Report found that the fees associated with debt protection products can be substantial, with the annual cost often exceeding 10 percent of the cardholder's average monthly balance.

## STATEMENT OF FACTS

62.     In or about March 2000, the plaintiff allegedly became a policyholder of defendants' MBNA America's Credit Protection Plus Plan ("Credit Protection Plan") under account number 5490-9931-2352-9010.

63.     In or about January 2005, the plaintiff allegedly continued as a policyholder of defendants' Credit Protection Plan under account number 5490-9931-2343-7545.

64.     At all times, from in or about March 2000 through the present, the defendants charged and collected from plaintiff fees at varying amounts for its Credit Protection Plan.

65.     At all times, the defendants illegally enrolled plaintiff in their Credit Protection Plan and did not disclose in writing the terms of the Credit Protection Plan.

66.     In a letter to the plaintiff dated February 10, 2010, as a response to Jonathan Henry's request for a copy of the alleged Credit Protection Plan issued to him, the defendant's sent a copy of a Credit Protection Plan document allegedly sent to plaintiff at the time of his enrollment in or about March 2000.

67.     In its letter to plaintiff dated February 10, 2010, the defendant's enclosed a one page undated document with the heading "Welcome To Credit Protection Plus", addressed to plaintiff.

68.     The aforesaid undated "Welcome to Credit Protection Plus" document was not sent to plaintiff at the alleged time of his alleged enrollment in or about March 2000.

69.     The aforesaid undated "Welcome To Credit Protection Plus" document was intended to misrepresent, mislead and deceive plaintiff that it was the document which was sent to him at the time of his alleged enrollment in or about March 2000.

70.     The aforesaid undated "Welcome To Credit Protection Plus" document attached an undated one page document entitled "Credit Protection Plus Terms And Conditions."

71.     The aforesaid undated "Credit Protection Plus Terms And Conditions" document was not sent to plaintiff at the time of his alleged enrollment in or about March 2000.

72.     The aforesaid undated "Credit Protection Plus Terms And Conditions" document was intended to misrepresent, mislead and deceive plaintiff that it was the document that was sent to him at the time of his alleged enrollment in or about March 2000.

73.     The aforesaid undated "Credit Protection Plus Terms And Conditions" document attached another undated one page document entitled "Credit Protection Plus Addendum."

74.     The aforesaid undated document entitled "Credit Protection Plus Addendum" was not sent to plaintiff at the time of his alleged enrollment in or about March 2000.

75.     The aforesaid undated "Credit Protection Plus Addendum" was intended to misrepresent, mislead and deceive plaintiff that it was the document that was sent to him at the time of his alleged enrollment in or about March 2000.

76.     In a letter dated September 14, 2010 to plaintiff's attorneys, defendants stated that the plaintiffs' "account is still currently protected under Credit Protection Plus and will continue to bill unless a request for cancellation is received."

77.     In a letter dated December 20, 2010 from defendant CSI Processing LLC to plaintiff's attorneys, defendants stated that plaintiff "provided authorization to enroll in this optional plan on March 8, 2001 through a telemarketing solicitation."

78.    Defendants' alleged Credit Protection Plan enrollment documents were allegedly destroyed in or about March 2006.

79.    Plaintiffs' alleged enrollment recording was allegedly destroyed in or about March 2006.

80.    The alleged destruction of the alleged Credit Protection Plan documents was intended to misrepresent, mislead and deceive plaintiff in a continuing scheme to conceal from plaintiff that no Credit Protection Plan documents were sent to him at the time of his alleged enrollment in or about March 2000.

81.    The alleged destruction of the alleged enrollment recording was intended to misrepresent, mislead and deceive plaintiff in a continuing scheme to conceal from plaintiff that he did not enroll or was illegally enrolled in defendants' alleged Credit Protection Plan in or about March 2000.

82.    Under defendants' alleged Credit Protection Plan, the plaintiff was charged a monthly rate of $0.89 to $1.00 per $100 of the Plan balance for each billing cycle.

83.    Under defendants' alleged Credit Protection Plan, the Plan balance was the total of the balance subject to an interest charge.

84.    Under defendants' alleged Credit Protection Plan, the benefit for a protected event was the cancellation of the total minimum payment due shown on plaintiffs' monthly billing statement for each billing cycle during the activation of the protected event.

85.    Under defendants' alleged Credit Protection Plan during the activation of the protected event, the cancelled minimum payment was added to the Plan balance for each billing cycle.

86.     Under defendants' alleged Credit Protection Plan, during the activation of the protected event, the cancelled minimum payment was not credited as a payment on the Plan balance for each billing cycle, thereby increasing the Plan Balance by the amount of the cancelled minimum payment for the next billing cycle.

87.     As a result of the aforesaid increased Plan Balance for each billing cycle, the minimum payments for each billing cycle were subject to interest and penalties as part of the Plan Balance.

88.     Defendants sold the alleged Credit Protection Plans without incurring any monetary risk, but simply extending the periods of time for payment of the minimum balance in each billing cycle.

89.     The alleged Credit Protection Plan by its terms in increasing the Plan Balance for each billing cycle in the amount of the cancelled minimum payment increased the Plan Balance subject to the monthly rate of $0.89 to $1.00 per $100 of the Plan balance, thereby enriching defendants through increased fees without sustaining any out-of-pocket expenditures.

90.     Under the alleged Credit Protection Plan, when a protected event was triggered, the cancelled minimum payments benefit was available: up to 9 months for approved involuntary unemployment, hospitalization, disability or family leave of absence from the date of incurrence of the protected event; and for 3 months for an approved life event.

91.     Plaintiff never received any cancellation of minimum payments under the Credit Protection Plan.

92.     Defendants stopped offering payment protection plans to new customers in or about October 2011.

93.     Defendants agreed to pay $20 million dollars in 2012 to settle a class action lawsuit in the United States District Court, San Francisco, that plaintiffs' Credit Protection Plus plan was mismarketed.

94.     Defendants stopped selling its own Credit Protection Plus Plan to new customers in or about August 2012.

95.     Capital One Financial Corp. agreed in or about July 2012 to a $210 million settlement with the Consumer Financial Protection Bureau concerning its own credit protection plan and has stopped offering such a plan.

96.     Discover Financial Services agreed in or about September 2012 to pay $214 million to settle a federal probe of its sale of credit protection products by the Consumer Financial Protection Bureau.

97.     CitiGroup Inc. in August 2012 ceased telephone sales of credit payment protection products while it reviewed its sales practices.

98.     The defendants and the other above identified banks have engaged in industry-wide practices in marketing, selling and processing credit payment protection products that provide little or no financial benefit to consumers, that have enrolled consumers for such services without their consent, that have misrepresented and deceived the services, costs and features, and that have generated substantial confiscatory, unreasonable and fraudulent fees for themselves at little risk and with little financial benefit to consumers.

99.     The alleged credit protection product allegedly issued by defendants to plaintiff offered more potential for earnings for defendants than if they offered plaintiff the opportunity to obtain alternative credit card insurance from a third party insurer.

100. The alleged credit protection product offered by defendants to plaintiff appeared as itemized charges on the subject monthly credit card statements and were added to the new balance due each month, thereby increasing the premiums and total monthly outstanding balance, which were subject to the imposition of interest and penalties, and were components of the "fees/interest charges" category that appeared in the credit card statement.

101. The alleged credit card protection product offered by defendants to plaintiff was the result of defendants focusing their marketing efforts on cardholders such as plaintiff who seem more likely to routinely carry a balance on their account.

102. The defendants failed to provide a written disclosure to plaintiff within the time provided by law after the alleged credit protection product was supposedly purchased by the plaintiff.

103. The defendants failed to maintain evidence that the plaintiff allegedly affirmatively elected to purchase the product after alleged disclosures were provided orally.

104. The defendants failed to disclose the maximum fees charged for the credit protection product allegedly sold to plaintiff.

105. The defendants misleadingly advertised its alleged credit protection product to the plaintiff.

106. The defendants engaged in unfair or deceptive marketing practices toward plaintiff concerning their alleged credit protection plan.

107. The defendants' alleged Credit Protection Plan made no benefit payments to plaintiff, thereby charging plaintiff unreasonable, unconscionable and confiscatory fees.

108. The defendants failed to disclose to the plaintiff the costs and benefits of their alleged Credit Protection Plan.

109.    The defendants failed to establish a reasonable relationship between their fees charged to plaintiff and the non-existent benefit payments made to plaintiff.

110.    The defendants paid third party marketing entities, related to defendants, excessive compensation in exchange for services rendered in connection with the alleged Credit Protection Plan charged to the plaintiff.

111.    The loss ratio for the type of alleged Credit Protection Plan sold to plaintiff was unreasonable, excessive, unconscionable, illegal and confiscatory.

## FIRST CAUSE OF ACTION
### Violations of the Truth in Lending Act,
15 U.S.C. §1601 et. seq.

112.    Plaintiff repeats, realleges and reiterates the preceding paragraphs of this Complaint, as if set forth in full herein.

113.    The purpose of the Truth in Lending Act of 1968, as amended, 15 U.S.C. §1601 and §1666; and Regulation Z, 12 C.F.R. part 226 ("TILA" and "Regulation Z") is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices. (15 U.S.C. §1601(a); 12 C.F.R. 226.1(b)).

114.    TILA requires all solicitations for the extension of credit to clearly, conspicuously and in readily understood language disclose the terms of the commitment that the offeror is extending to the consumer.

115.    Congress delegated authority for the implementation of TILA to the Federal Reserve Board ("Board"), 15 U.S.C. §1604.  The Board promulgated Regulation Z, which is TILA's implementing regulation, 12 C.F.R. §226 et seq.

116.    Defendants additional failure to disclose in their applications, solicitations, billing statements or otherwise that the premium charged for Credit Protection is a finance charge, that the minimum payment does not include all fees imposed, and that the interest is charged on penalty fees and costs in connection with their Credit Protection Plan violates sections 1605 and 1637(a)(3), a(4) and b(4) of TILA.

117.    As a result of defendants' violations of TILA and Regulation Z, defendants are liable to plaintiff pursuant to 15 U.S.C. §1640, including actual damages resulting from their improper and illegal practices, "the lesser of $500,000 or 1 percent" of the  net worth of defendants, costs and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
Violation of the Delaware's Consumer Fraud
Act, 6 Del. C. §2511-27, 2580-84

118.    Plaintiff repeats, realleges and reiterates the preceding paragraphs of this Complaint, as if set forth in full herein.

119.    Each defendant is a "person" as defined by 6 Del. C. §2511(7).

120.    Credit Protection is "merchandise" within the meaning of 6 Del. C. §2511(6).

121.    Credit Protection advertising and marketing materials are "advertisements" within the meaning of 6 Del. C. §2511(1).

122.    Delaware's Consumer Fraud Act provides in relevant part that:

> The act, use or employment by any person of any deception,
> fraud, false pretense, false promise, misrepresentation, or the
> concealment, suppression, or omission of any material fact
> with intent that others rely upon such concealment, suppression,

> or omission, in connection with the sale, lease or advertisement
> of any merchandise, whether or not any person has in fact
> been misled, deceived or damaged thereby, is an unlawful
> practice. 6 Del. C. §2513

123.    Defendants violated the Delaware Consumer Fraud Act's proscription against the

act, use or employment of any deception, fraud, false pretense, false promise, misrepresentation,

or the concealment, suppression or omission of any material fact as alleged in the preceding

paragraphs of this Complaint, including, but not limited to: concealing from plaintiff that

defendants enrolled him in their Credit Protection Plan; affirmatively misrepresenting to plaintiff

at all times that their Credit Protection Plan had characteristics and benefits that it does not have;

concealing from plaintiff that defendants would not honor their Credit Protection Plan;

destroying all records relating to plaintiff's alleged initial consent to enrollment; refusing at all

times to the present to remove plaintiff from defendants' Credit Protection Plan; allegedly

enrolling plaintiff in defendants' alleged Credit Protection Plan without disclosing to him the

amount he had already paid for defendants' Credit Protection Plan; reporting negatively to credit

agencies of plaintiff's alleged payment default that was comprised substantially of fees, interests,

costs and penalties imposed by the defendants; in making harassing telephone calls to plaintiff

for payment of his outstanding credit card balance that was comprised substantially of fees,

interest, costs and penalties imposed by the defendants under their Credit Protection Plan.

124.    Defendants intended that plaintiff would rely upon their deception, fraud, false

pretense, misrepresentation, false promise, suppression, concealment and/or omission in

connection with their Credit Protection Plan.

125.    Defendants' Credit Protection Plan's operations occurred "in the conduct of any

trade or commerce in part or wholly within this state" (Delaware) under the Delaware Consumer

Fraud Act as: (a) at least some of the deceiving conduct that violates 6 Del. C. §1253 originated,

arose, was directed and emanated from Delaware, and/or (b) the presence of defendants in Delaware is sufficient grounds for the application of the Delaware Consumer Fraud Act.

126.    As a direct and proximate cause of defendants' acts and omissions, plaintiff has been damaged in an amount to be determined at trial.

127.    In addition to compensatory damages, plaintiff is entitled to the imposition of punitive damages, attorneys' fees and costs because of defendants' fraudulent, gross, oppressive and reckless conduct in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
Violation of New York Consumer Fraud
Act, New York General Business Law, New
York Insurance Law and New York Banking Law

128.    Plaintiff repeats, realleges and reiterates the preceding paragraphs of this Complaint, as if set forth in full herein.

129.    New York deceptive trade practices act was enacted following the passage of the Federal Trade Commission ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers.

130.    Defendants' actions violate the New York Consumer Protection Act (N.Y. Gen. Bus. Law §349, 350) through their Credit Protection Plan: in engaging in deceptive practices by representing that such services have characteristics and benefits that they do not have; in representing that such services are of a particular standard, quality or grade when they are of another; in advertising such services with intent not to sell them as advertised; in making false or misleading statements of fact concerning such services and about the reasons for existence of or amount of the price; and engaging in other conduct which creates a likelihood of confusion or of misunderstanding.

131.   The conduct described in this entire Complaint constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of New York state's statutes prohibiting unfair and deceptive acts and practices.

132.   The conduct described in this Complaint has directly, foreseeably and proximately caused damages to plaintiff in amounts to be determined at trial.

### FOURTH CAUSE OF ACTION
Fraud

133.   Plaintiff repeats, realleges and reiterates the preceding paragraphs of this Complaint, as if set forth in full herein.

134.   Defendants enrolled plaintiff in its Credit Protection Plan without his consent.

135.   Plaintiff entered into a credit card agreement with defendants that did not include any permission for enrollment in a Credit Protection Plan.

136.   Defendants charged plaintiff for their Credit Protection Plan without his consent or authorization commencing in or about March 2000 to date and despite the absence of any provision in plaintiff's credit card agreement allowing defendants to do so.

137.   Defendants' fraudulently, *inter alia*, induced plaintiff: to pay fees for their Credit Protection Plan through the imposition of monthly fees from in or about March 2000 through the present on plaintiffs' outstanding monthly balances; by enrolling him without his consent; by failing to disclose to him that he need not obtain their Credit Protection Plan as part of his credit card obligations; by failing to present to him any written materials concerning their alleged Credit Protection Plan until on or about February 10, 2010; by falsely producing to him in or about February 10, 2010 Credit Protection Plan terms, conditions and materials supposedly given to him in or about March 2000; by failing to disclose to him from in or about March 2000 to the

present that the monthly fees charged to him became part of his outstanding monthly balance subject to interest, penalties and costs; by the destruction of plaintiffs' alleged initial enrollment records and recordings relating to the alleged enrollment in or about March 2000; by charging plaintiff for his alleged enrollment in defendants' Credit Protection Plan a monthly rate of approximately $0.89 to $1.00 per $100 of the Plan balance for each billing cycle; et. seq.

138. Plaintiff to his detriment relied upon the defendants' material misrepresentations, acts of deception, acts of fraud, misleading statements, unfair advertising, unconscionable conduct and confiscatory taking of plaintiffs' property.

139. By reason of the foregoing, plaintiff sustained compensatory damages and is entitled to the award of punitive damages, attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
Breach of Covenant of Good Faith
And Fair Dealing

140. Plaintiff repeats, realleges and reiterates the preceding paragraphs of this Complaint, as if set forth in full herein.

141. In the event this Court or a jury should determine that plaintiff legally enrolled in defendants' Credit Protection Plan, the defendants had a duty of good faith and fair dealing.

142. Defendants failed: in executing the alleged Credit Protection Plan agreement; in discharging its obligations according to its terms; in complying with the form and substance of the alleged agreement, in violating the spirit of the alleged agreement, and in abusing their power.

143. Under defendants' credit card contract and alleged Credit Protection Plan, they impliedly promised to perform their contractual obligations in accordance with the principles of good faith and fair dealing.

144.    By reason of the foregoing, defendants have breached the covenant of good faith and fair dealing through their policies and practices and are liable to plaintiff.

145.    By reason of the foregoing, plaintiff is entitled to the award of compensatory and punitive damages with costs, disbursements and attorneys' fees.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

146.    Plaintiff repeats, realleges and reiterates the preceding paragraphs of this Complaint, as if set forth in full herein.

147.    In the alternative and in the event the Court or a jury finds that no Credit Protection Plan exists, plaintiff sets forth this claim under the doctrine of unjust enrichment.

148.    In seeking to increase their fee revenue, defendants charged plaintiff without his consent or authorization.

149.    In unknowingly paying unauthorized and fraudulent charges to defendants for a Credit Protection Plan, plaintiff conferred a benefit upon defendants, which they knowingly accepted with the knowledge that they were not entitled to such a benefit.

150.    Defendants were unjustly enriched by charging plaintiff for illusory benefits, which he never requested or authorized.

151.    Defendants were unjustly enriched by charging plaintiff substantial Credit Protection Plan fees.

152.    Defendants were unjustly enriched by fraudulently enrolling and charging Credit Protection Plan fees to plaintiff.

153.    By reason of the foregoing, defendants' actions constituted unjust enrichment.

154.    By reason of the foregoing, plaintiff sustained actual damages for which defendants are liable.

155.    By reason of the foregoing, plaintiff is entitled to disgorgement of the amounts paid with the award of interest from on or about March 2000 to the present.

156.    By reason of the foregoing, plaintiff is entitled to the award of compensatory and punitive damages with costs, disbursements and attorneys' fees.

### SEVENTH CAUSE OF ACTION
Breach of Fiduciary Duty

157.    Plaintiff repeats, realleges and reiterates the preceding paragraphs of this Complaint, as if set forth in full herein.

158.    Defendants were in a fiduciary relationship with plaintiff.

159.    Defendants failed to comply with their fiduciary duties in failing: to disclose their exclusive knowledge of material facts not known to plaintiff; in concealing material facts from the plaintiff; and in making partial representations to the plaintiff while simultaneously suppressing other material facts.

160.    Defendants failed to disclose to plaintiff the true nature of their Credit Protection Plan and its terms, conditions, benefits, limitations on benefits, exclusions and proof required to support a claim.

161.    Defendants failed to disclose to plaintiff that he had to affirmatively decline enrollment in order not to be enrolled.

162.    Defendants' deceptive representations and omissions were meant to mislead plaintiff, who reasonably interpreted the misrepresentations and omissions to mean that he would not be enrolled in defendants' Credit Protection Plan if he had not voluntarily enrolled.

163.    Defendants' conduct was intentional and was specifically designed to enroll plaintiff in their Credit Protection Plan and impose charges on his credit card statements without his permission.

164.   Defendants' misrepresentations and omissions were material in that a reasonable person would attach importance to such information in deciding whether or not to enroll in their Credit Protection Plan or being enrolled in and charged for Credit Protection without their permission.

165.   Plaintiff relied to his detriment on defendants' misrepresentations and omissions in allegedly enrolling in their Credit Protection plan and was harmed by defendants' failure to disclose that he was being enrolled without his consent in their Credit Protection plan.

166.   Plaintiff seeks compensatory damages and, in view of defendants' intentional breach of fiduciary duty, an award of punitive damages, attorneys' fees and costs.

### EIGHTH CAUSE OF ACTION
New York Gen. Bus. Law
§349 and §350

167.   Plaintiff repeats, realleges and reiterates the preceding paragraphs of this Complaint, as if set forth in full herein.

168.   Defendants' alleged sale of their product and services to plaintiff constituted the "conduct of any trade or commerce in New York" within the meaning of New York Gen. Bus. Law §349.

169.   Defendants' conduct has a broad impact on consumers-at-large.

170.   Defendants' fraudulent scheme related to their Credit Protection Plan constitutes deceptive and unfair practices.

171.   Similar residents of New York, in addition to the plaintiff, have been injured as a result of defendants' scheme, as they paid for a product that they did not consent to and that had no value to them.

172.     Similar residents of New York, in addition to the plaintiff, were injured as aforesaid and as a result of defendants' scheme because they paid an inflated and unconscionable price for the product, as defendants' fees bear no rational basis to the value of the product, because their calibrations are based on their entire outstanding monthly balances, which include interest and penalties on prior Credit Protection Plan monthly fees and on prior interest and penalties.

173.     Similar residents of New York, in addition to the plaintiff, were injured as a result of defendants' scheme because of the limited monetary value in relation to the alleged benefits from defendants' Credit Protection Plan and because of defendants' manipulation of the claims process.

174.     By reason of the foregoing, the defendants engaged in conduct directed at consumers-at-large, so plaintiff is entitled to the award of compensatory and punitive damages, attorneys' fees, disbursements and costs.

## JURY DEMAND

175.     Plaintiff demands a jury to try all claims triable by a jury.


**WHEREFORE**, plaintiff, Jonathan Henry, respectfully requests that this Court:

      a. accept jurisdiction over all the matters and claims set
         forth against the above-identified defendants;

      b. impanel a jury to hear plaintiff's claims;

      c. award plaintiff compensatory and punitive damages
         in the amount to be determined at the trial of
         this action;

d. award plaintiff costs, expenses and attorneys' fees
   associated with the prosecution of his claims before
   this Court; and

e. grant such other relief as this Court deems just and proper.

Dated: White Plains, New York
      January  , 2013

Yours, etc.

**HENRY & REGAN-HENRY**
Attorneys for Plaintiff

by: _____
    JOHN V. HENRY (JH 6341)
44 Church Street
White Plains, New York 10601
(914) 948-1450
(914)948-1439 (facsimile)
jvhenry66@gmail.com